## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| LEAH ASHLEY DOWDELL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:21-cv-00371 |
| | § | |
| PROFESSIONAL SERVICE PROPERTY | § | With Jury Demand Endorsed |
| MANAGEMENT, LLC and HUNTER | § | |
| WARFIELD, INC., | § | |
| | § | |
| Defendants. | § | |

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff Leah Ashley Dowdell ("Plaintiff"), by and through counsel, for her Complaint against Defendants Professional Service Property Management, LLC ("PROS PM") and Hunter Warfield, Inc. ("Hunter Warfield") (collectively, the "Defendants"), states as follows:

### I. INTRODUCTION

1.        Defendants engaged in willful, malicious, deceptive and harassing actions against Plaintiff in furtherance of their efforts to illegally collect from her a debt that was included in her bankruptcy case and later discharged.  Defendants' actions at issue include: 1) calling Plaintiff on her cell phone demanding payment; 2) sending collection letters and other correspondence to the Plaintiff; 3) sending text messages to Plaintiff on her cell phone; and 4) impermissibly accessing Plaintiff's confidential credit file with TransUnion.

2.        Specifically, Plaintiff claims Defendants violated: 1) Chapter 41, the Consumer Credit Protection Credit Act, of Title 15 (Commerce and Trade) of the United States Code, specifically, 15 U.S.C. § 1681 et seq., (known as the Fair Credit Reporting Act, "FCRA"); 2) Tex. Fin. Code § 392.001 *et seq.,* known as the Texas Debt Collection Act ("TDCA"); 3) the common

law prohibiting invasion of privacy; 4) 15 U.S.C. § 1692 et seq., known as the Fair Debt Collection Practices Act ("FDCPA"); and 5) the automatic stay and discharge injunctions of the United States Bankruptcy Court for the Northern District of Texas, Dallas Division.  Plaintiff seeks to recover from Defendants actual, statutory, and punitive damages, and legal fees and expenses.

## II. PARTIES

3.      Plaintiff is a natural person residing in Dallas County, Texas and a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c); TDCA, Tex. Fin. Code § 392.001(1); and the FDCPA, 15 U.S.C. § 1692a(3).

4.      Defendant PROS PM is a domestic limited liability company that may be served by delivering a summons to its registered agent, Jay Brakefield, at 3105 Union Lake Road, Denton, Texas 76205.

5.      Defendant Hunter Warfield is a foreign corporation that may be served by delivering a summons to its registered agent, Corporation Service Company dba CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

6.      Defendants are "persons" and "users" of consumer credit and other financial information, as said terms are defined under the FCRA, 15 U.S.C. § 1681a(b), and "creditors," "debt collectors," and/or "third-party debt collectors" under the TDCA, Tex. Fin. Code §§ 392.001(3)(6) and (7) and the FDCPA, 15 U.S.C. §§ 1692a(4) and (6).

7.      The debt Defendants were attempting to collect from Plaintiff was a "consumer debt" or "debt," as said terms are defined by Tex. Fin. Code § 392.001(2) and the FDCPA, 15 U.S.C. § 1692a(5).

8.      Defendant Hunter Warfield is a furnisher of consumer credit information to Trans Union, LLC ("TransUnion"), Equifax, Inc. ("Equifax"), and Experian Information Solutions, Inc. ("Experian") (collectively, the "Credit Reporting Agencies" or "CRAs").

### III. JURISDICTION AND VENUE

9.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1334 and 1367 and 15 U.S.C. §§ 1681p and 1692.

10.     Venue is proper this district because Defendants transact business in this district, Plaintiff filed her bankruptcy case in this district, and the conduct complained of occurred in this district.

### IV. FACTUAL ALLEGATIONS

**A.     The Inclusion of the Subject Debt in Plaintiff's Bankruptcy Case.**

11.     On January 21, 2020, Plaintiff filed for Chapter 13 bankruptcy in case number 20-30208-hdh13 ("Bankruptcy Case") in the Northern District of Texas Bankruptcy Court, Dallas Division ("Bankruptcy Court").

12.     On Schedule "D" filed with her bankruptcy petition, Plaintiff listed a debt to PROS PM for past due rent on an apartment lease at 2518 N. Fitzhugh, Apt. 101, Dallas, Texas ("the Account") as a secured claim.

13.     A true and correct copy of relevant portions of Plaintiff's Amended Schedule "D" is attached hereto as Exhibit "A."

14.     On or about January 24, 2020, the Bankruptcy Noticing Center for the Bankruptcy Court sent a copy of the "Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors and Deadlines" ("341 Notice") to Defendant PROS PM, by first class mail.  The 341 Notice warned all creditors, in conspicuous language, against violating the automatic stay imposed by 11 U.S.C. § 362.  The United States Postal Service did not return the 341 Notice sent to Defendant PROS PM, creating a presumption it was received by Defendant PROS PM.

15.     On February 5, 2020 Plaintiff filed her Chapter 13 Plan which assumed the lease and provided for her past due rent to Defendant PROS PM to be paid through her plan.

16.     A true and correct redacted copy of Plaintiff's Chapter 13 Plan is attached hereto as Exhibit "B."

**B.     Defendant PROS PM Contacted the Plaintiff on Numerous Occasions During the Bankruptcy Attempting to Collect on the Account and Then Assigned the Account To Defendant Collection Agency Hunter Warfield.**

17.     During the bankruptcy, while the automatic stay was in effect, the Defendants engaged in willful, malicious, deceptive and harassing actions in their attempts to collect the delinquent rent that was initially included in Plaintiff's Chapter 13 Plan.

18.     For example, on June 11, 2020 at 12:50 p.m., Defendant PROS PM's representative Taylor Brakefield sent text messages to Plaintiff asking "…Have you received any direction on when payment will be made?" and Plaintiff responded "…It's my understanding that at least $3,000 of that total amount due on the notice Lili gave me has been built into my bankruptcy plan to pay off my rental arrears…"  Taylor responded followed by "Thank you.  At this point the balance less fees is $6,000." and "…we have to have payment in hand immediately.  From our standpoint, we need the payment of a minimum of the $6k that is owed to date."

19.     True and correct copies of cell phone screenshots of the June 11, 2020 text messages are attached hereto as Exhibit "C."

20.     On June 24, 2020, at 3:08 p.m., Defendant PROS PM's representative Taylor Brakefield sent a text message to Plaintiff asking: "Any update on maing (sic) a payment?" and on June 25, 2020 at 11:31 a.m., she sent a text message to Plaintiff asking: "Leah, what is the status of your rent Payment?"

21.     A true and correct copy of a cell phone screenshot of the June 24 and 25, 2020 text messages is attached hereto as Exhibit "D."

22.     On July 28, 2020, Plaintiff voluntarily converted her case to Chapter 7.

23.     On July 31, 2020, the Bankruptcy Noticing Center for the Bankruptcy Court presiding over the Bankruptcy Case sent a copy of the "Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors and Deadlines" ("341 Notice"), by first class mail to PROS PM.  The 341 Notice warned all creditors, in conspicuous language, against violating the automatic stay imposed by 11 U.S.C. §362.  The United States Postal Service did not return the 341 Notice sent to PROS PM, creating a presumption it was received.

24.     On August 10, 2020, Plaintiff filed her Statement of Intent indicating she was rejecting the apartment lease, surrendering and vacating the leasehold.

25.     A true and correct copy of the August 10, 2020 Statement of Intent is attached hereto as Exhibit "E."

26.     On August 18, 2020, Defendant PROS PM filed a motion for relief from the automatic stay to allow eviction which was initially contested by Plaintiff.

27.     On September 16, 2020, Plaintiff and Defendant PROS PM entered into an Agreed Order Granting Motion for Relief from the Automatic Stay to Allow Eviction.  Under the terms of the order, Defendant PROS PM was allowed to contact the Plaintiff about the eviction, but otherwise was subject to the automatic stay.

28.     A true and correct copy of the September 16, 2020 Agreed Order is attached hereto as Exhibit "F."

29.     On or about September 22, 2020, Plaintiff completed her move out of the apartment.

30.     On or about October 13, 2020, PROS PM assigned the Account to Defendant Hunter Warfield for collection.  From that date, Defendant Hunter Warfield began to continually harass and try to coerce Plaintiff regarding past due payments on the Account and demanded she pay the past due amount by: 1) impermissibly accessing Plaintiff's confidential TransUnion credit

report; 2) sending statements and correspondence demanding payment; and 3) repeatedly calling Plaintiff.

31.     On or about October 13, 2020, Defendant Hunter Warfield impermissibly accessed Plaintiff's confidential credit file from TransUnion and obtained and used her TransUnion consumer report without a legal purpose.  In order to impermissibly obtain and use Plaintiff's TransUnion consumer report and Plaintiff's personal and confidential information contained therein, Defendant Hunter Warfield furnished false information to TransUnion, misrepresenting it had a legally permissible purpose to conduct account review inquiries on the Account and access and review Plaintiff's credit file to obtain her consumer reports from TransUnion.  Further, the credit report Defendant accessed on October 13, 2020 included information about Plaintiff's Bankruptcy.

32.     A true and correct redacted copy of relevant excerpts from Plaintiff's TransUnion credit report dated January 26, 2021, showing Defendant Hunter Warfield's impermissible account review which resulted in Defendant Hunter Warfield accessing Plaintiff's credit file and obtaining and using Plaintiff's consumer report, is attached hereto as Exhibit "G."

33.     On or about October 14, 2020, Defendant Hunter Warfield sent Plaintiff a collection letter, complete with a detachable payment coupon and return envelope, demanding payment of $13,450.18.  The letter states "**THIS IS A COMMUNICATION FROM A DEBT COLLECTOR.  THIS IS AN ATTEMPT TO COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE,**" even though the automatic stay was in effect.

34.     A true and correct redacted copy of the October 14, 2020 letter is attached hereto as Exhibit "H."

35.     On October 15, 2020 at 1:19 p.m., a representative of Defendant Hunter Warfield called Plaintiff and left her a voicemail stating: "We have an important message from _____ Warfield is a call from a debt collector please call 844-440-2806 extension 4560… (sic)."

36.     A true and correct redacted copy of a cell phone screenshot of the October 15, 2020 message is attached hereto as Exhibit "I."

37.     On November 13, 2020, the Bankruptcy Court issued an order granting Plaintiff a discharge ("Discharge Order"). The Discharge Order followed Official Form 318, including the explanatory language contained therein. The Discharge Order discharged Plaintiff from any liability for the debt created by the Account. Included with the Discharge Order was an explanation of the general injunction prohibiting any attempt to collect discharged debts, warning all creditors, in conspicuous language, that "**Creditors cannot collect discharged debts**" and that "Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally. Creditors who violate this order can be required to pay debtors damages and attorney's fees."

38.     On or about November 15, 2020, the Bankruptcy Noticing Center mailed a copy of the Discharge Order to PROS PM by first class mail. This mailing, which was not returned, constituted notice to PROS PM and all creditors of the discharge granted in Plaintiff's Bankruptcy Case and the replacement of the automatic stay of 11 U.S.C. § 362 with the discharge injunction imposed by 11 U.S.C. § 524(a).

39.     A true and correct redacted copy of the Discharge Order is attached hereto as Exhibit "J."

40.     At no time during the pendency of Plaintiff's Bankruptcy Case did Defendant or any other person or entity object to or dispute the details or completeness of the claim regarding the Account listed on Schedule "D" to Plaintiff's Petition.

41.     At no time did Plaintiff affirm the lease or reaffirm the debt on the Account with any person or entity.

42.     At no time did the Bankruptcy Court declare the debt on the Account to be non-dischargeable.

**C.     After Plaintiff's Discharge, Defendant Hunter Warfield Continued to Harass Plaintiff and Attempted to Coerce or Deceive Her into Paying the Discharged Debt.**

43.     When the Bankruptcy Court granted Plaintiff a discharge, the Account legally became uncollectible such that there was no longer any payment owing.  Nevertheless, Defendants engaged in prohibited, coercive, deceptive, and harassing actions against Plaintiff in furtherance of Defendants' illegal debt collection activity by continually calling Plaintiff many times to urge and coerce her to take steps to pay on the Account or take actions that would benefit Defendants financially related to the discharged Account.

44.     For instance, on November 28, 2020 at 9:49 a.m., a representative of Defendant Hunter Warfield called Plaintiff and left the following message: "We have an important iMessage from Hunter Warfield this is a call from a debt collector please call 1-844-440-2807 extension 5959… (sic)."

45.     A true and correct redacted copy of a cell phone screenshot of the November 29, 2020 voicemail is attached hereto as Exhibit "K."

## V.  GROUNDS FOR RELIEF - COUNT I

### FAIR CREDIT REPORTING ACT (FCRA 15 U.S.C. § 1681 *et. seq*)

46.     Plaintiff repeats, re-alleges, and incorporates by reference the above paragraphs, as if fully rewritten here.

47.     Once the debt on the Account was included in Plaintiff's Chapter 13 Bankruptcy Case and later converted to Chapter 7, the automatic stay ended any right Defendant PROS PM

had to assign the Account for collections to Defendant Hunter Warfield or for them to contact the Plaintiff regarding the debt.  Thus, Defendant Hunter Warfield had no legal right to obtain Plaintiff's consumer report from TransUnion.  After filing bankruptcy, Plaintiff never sought credit from Defendant Hunter Warfield, nor did she authorize Defendant Hunter Warfield to pull her credit reports from the CRAs.

48.    The FCRA establishes very specific rules limiting when and why an entity can obtain a consumer report:

(f) CERTAIN USE OR OBTAINING OF INFORMATION PROHIBITED. – A person shall not use or obtain a consumer report for any purpose unless –

(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and

(2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

15 U.S.C. § 1681b (f).

49.    Section 1681b(a)(3) of the FCRA lists the all-inclusive purposes for which a consumer report can be obtained and, in relevant part, states:

(a) IN GENERAL. – * * * any consumer reporting agency may furnish a consumer report under the following circumstances and no other:

***

(3) To a person which it has reason to believe –

(A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer;

***

(E) intends to use the information, as a potential investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation; or

(F) otherwise has a legitimate business need for the information-

* * *

(ii) to review an account to determine whether the consumer continues to meet the terms of the account.

*See* 15 U.S.C. § 1681b (a)(3).

50.    Section 1681a(d)(1) defines a consumer report as:

(d) CONSUMER REPORT. –

> (1) IN GENERAL. – The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of servicing as a fact in establishing the consumer's eligibility for-
>
> > (A) credit or insurance to be used primarily for personal, family, or household purposes;
> >
> > (B) employment purposes; or
> >
> > (C) any other purpose authorized under section 1681(b) of this title.

15 U.S.C. § 1681a (d)(1).

51.    After Plaintiff converted her Bankruptcy Case to one under Chapter 7, Defendant Hunter Warfield requested, obtained and used Plaintiff's consumer report from TransUnion without a permissible purpose as established by the FCRA.

52.    Plaintiff never sought credit from Defendant Hunter Warfield or engaged in any business dealings with Defendant Hunter Warfield that would have provided Defendant Hunter Warfield with a legal reason to pull her credit from the CRAs.  Thus, Defendant Hunter Warfield's obvious and only purpose for obtaining and using Plaintiff's consumer report from TransUnion as it did, was to impermissibly gather information about Plaintiff in furtherance of its illegal collection attempts on the subject debt for the Account.  If Defendant Hunter Warfield denies this was its purpose, then it illegally obtained and used Plaintiff's personal and financial information, which is protected by law, and used it for an impermissible reason, as there was no permissible reason during the time at issue.

53.    In order to gain access to Plaintiff's credit file and/or consumer report and confidential information therein after Plaintiff filed bankruptcy, and to have information about

these account reviews reported on Plaintiff's TransUnion credit report for her and other third parties to see to deceptively make Plaintiff or other third parties believe the debt on the Account was still due and owing from Plaintiff, Defendant Hunter Warfield reported false information to TransUnion that its purpose for accessing Plaintiff's consumer report or credit file was ostensibly for an account review or that it was legally allowed to access the report for collection purposes which was false and prohibited by the automatic stay.  At all relevant times, the debt on the Account had been deemed legally uncollectible.  Thus, there was no legitimate reason for Defendant Hunter Warfield to access or review Plaintiff's credit file from any of the CRAs and obtain and use her consumer reports impermissibly.

54.     At all relevant times, Defendant Hunter Warfield was trying to gain confidential information about Plaintiff in furtherance of its *in personam* collection efforts on the subject debt. If it denies this was its purpose, then Defendant Hunter Warfield was trying to gain access to Plaintiff's confidential, personal and financial information which is protected from access without a permissible purpose by law.

55.     If Defendant Hunter Warfield represented to TransUnion that it intended to use the information in Plaintiff's consumer report in connection with a valuation of, or an assessment of the credit or prepayment risks associated with an existing credit obligation on the Account or by Plaintiff, that would have been false, since there was no debtor-creditor relationship between Plaintiff and Defendant Hunter Warfield.

56.     When Defendant Hunter Warfield obtained Plaintiff's consumer report from TransUnion, it had actual knowledge Plaintiff had not requested credit from it or initiated a business transaction with it at any time since filing her Bankruptcy Case and it knew Plaintiff no longer had an existing credit obligation for the Account.  Thus, Defendant Hunter Warfield had actual knowledge it did not have a permissible purpose to access, obtain and use Plaintiff's

consumer reports and confidential information therein from the CRAs as it did during the times at issue.

57.     For Defendant Hunter Warfield to request and obtain Plaintiff's private personal and financial information, in the face of actual knowledge it had no permissible purpose to do so, constitutes its knowing and willful violations of the FCRA.

58.     After a reasonable time to conduct discovery, Plaintiff believes she can prove Defendant Hunter Warfield used false pretenses, namely the representation it intended to use Plaintiff's consumer report for a permissible purpose, when it had no permissible purpose under the FCRA, in order to obtain and use Plaintiff's confidential, personal and financial information for the illegal purpose of attempting to collect on the subject debt.

59.     After a reasonable time to conduct discovery, Plaintiff believes she can prove Defendant Hunter Warfield is unwilling or unable to prevent its system(s) or agents from requesting and obtaining Plaintiff's consumer report without a permissible purpose, thereby subjecting Plaintiff to having her private, personal and financial information disclosed without her consent, authorization or other legal justification.

60.     After being afforded a reasonable time to conduct discovery in this case, Plaintiff believes she will be able to show Defendant Hunter Warfield promised through its subscriber agreements or contracts with the subject CRA(s) to properly furnish accurate information to access and review consumer reports for accounts that have been included in bankruptcy; but Defendant has willfully, maliciously, recklessly, wantonly, and/or negligently failed to follow these requirements and agreements, which has resulted in its intended consequences of conducting the inquires at issue in furtherance of its attempts to collect the debt, including, but not limited to, Plaintiff's consumer report(s) at issue.

61.     As a direct and proximate result of Defendant Hunter Warfield's conduct, as outlined above, Plaintiff has suffered, and will continue to suffer, substantial injury, including, but not limited to, mental anguish and emotional distress, entitling her to an award of actual damages in an amount to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

62.     The injuries suffered by Plaintiff as a result of Defendant Hunter Warfield impermissibly obtaining and using her consumer report(s) were attended by circumstances of fraud, malice, and willful and wanton misconduct, entitling Plaintiff to punitive damages pursuant 15 U.S.C. § 1681n(a)(2).  Since Defendant Hunter Warfield's impermissible acquisition and use of Plaintiff's consumer report will have a continuing adverse impact on Plaintiff and the violations may be ongoing in nature, Defendant Hunter Warfield is liable for any and all future harm suffered by Plaintiff as a result of this actionable conduct.

### VI.  GROUNDS FOR RELIEF - COUNT II

### TEXAS FINANCE CODE – TEXAS DEBT COLLECTION ACT (TDCA)

63.     Plaintiff repeats, re-alleges, and incorporates by reference all the above Paragraphs as if fully rewritten here.

64.     Defendant has violated the Texas Finance Code in numerous ways, including, but not limited to, the following:

    a)    Tex. Fin. Code § 392.301(a)(8) prohibits Defendants from taking an action prohibited by law.  Inasmuch as: 1) the bankruptcy automatic stay and discharge injunction prohibited anyone from attempting to collect debts included or discharged in bankruptcy *in personam*; 2) the common law protects Plaintiff's privacy rights; 3) the automatic stay and discharge injunction prohibits the calls at issue; Defendants' actions against Plaintiff also violated the TDCA;

    b)    Tex. Fin. Code § 392.302(4) prohibits Defendants from causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person at the called number.

Because Defendants' representatives repeatedly and relentlessly called and texted Plaintiff throughout the bankruptcy and even after the debt was discharged trying to collect on the Account, Defendant also violated this section of the TDCA;

c) Tex. Fin. Code § 392.304(a)(8) prohibits misrepresenting the character, extent, or amount of Plaintiff's debt. Defendants misrepresented to Plaintiff that the Account was past due and owing in its collection calls, texts and correspondences even though the default had been cured by her Chapter 13 filing or later discharged after the case was converted to Chapter 7. These were misrepresentations of the character, extent or amount of the subject debt, in violation of the TDCA; and

d) Tex. Fin. Code § 392.304(a)(19) prohibits Defendants' use of false representations or deceptive means to collect a debt, for the reasons stated in the preceding paragraphs (a - c); Defendant intentionally tried to coerce or deceive Plaintiff into paying the debt, while Defendant knew the Account was part of a Chapter 13 or later discharged in Plaintiff's bankruptcy, rendering the debt legally uncollectible from Plaintiff *in personam.*

65. Under Tex. Fin. Code Ann. § 392.403, Defendants' actions make them liable to Plaintiff for actual damages, statutory damages, injunctive relief, costs, and reasonable attorney's fees. Also, Plaintiff's injuries resulted from Defendants' malice, actual fraud and/or willful and intentional misconduct, entitling Plaintiff to punitive damages.

66. Because of Defendants' conduct, Plaintiff was forced to hire counsel to pursue this action, and Plaintiff's recoverable damages include her reasonable attorney's fees incurred in prosecuting this claim.

### VII. GROUNDS FOR RELIEF- COUNT III

### FAIR DEBT COLLECTION PRACTICES ACT

67. Plaintiff repeats, re-alleges, and incorporates by reference all previous paragraphs above, as if rewritten here in their entirety.

68. The Fair Debt Collection Practices Act ("FDCPA") is a comprehensive statute which prohibits a catalog of activities in connection with the collection of debts by third parties. *See* 15 U.S.C. § 1692 *et seq.* The FDCPA imposes civil liability on any person or entity that

violates its provisions, and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights.  *See* 15 U.S.C. § 1692k.  The operative provisions of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, prohibit harassing and abusive tactics, and proscribe unfair or unconscionable conduct, both generally and in a specific list of disapproved practices.

69.     In particular, the FDCPA broadly enumerates several practices considered contrary to its stated purpose, and forbids debt collectors from taking such action.  The substantive heart of the FDCPA lies in three broad prohibitions.  First, a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  15 U.S.C. § 1692d.  Second, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  And third, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.  The FDCPA is designed to protect consumers from unscrupulous collectors, whether or not there exist a valid debt, broadly prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and any false, deceptive or misleading statements in connection with the collection of a debt.

70.     In enacting the FDCPA, the United States Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, the loss of jobs, and to invasions of individual privacy."  15 U.S.C. § 1692a.  Congress additionally found existing laws and procedures for redressing debt collection injuries to be inadequate to protect consumers.  *See* 15 U.S.C. § 1692b.

71.     Congress enacted the FDCPA to regulate the collection of consumer debts by debt collectors.  The express purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to ensure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692e.

72.     The FDCPA is a strict liability statute, which provides for actual and statutory damages upon the showing of a single violation.  *See Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62-3, (2d Cir. 1993); *see also Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232 (5th Cir. 1997).  "Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages."  *Russell v. Equifax A.R.S.*, 74 F.3d 30 (2d Cir. 1996); *see also Gearing v. Check Brokerage Corp.*, 233 F.3d 469 (7th Cir. 2000) (holding unintentional misrepresentation of debt collector's legal status violated FDCPA); *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993).

73.     The FDCPA is a remedial statute, and therefore must be construed liberally in favor of the debtor.  *Sprinkle v. SB&C Ltd.*, 472 F. Supp. 1235 (W.D. Wash. 2006).  The remedial nature of the FDCPA requires that courts interpret it liberally.  *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162 (9th Cir. 2006).  "Because the FDCPA, like the Truth in Lending Act (TILA), 15 U.S.C. §1601 *et seq.*, is a remedial statute, it should be construed liberally in favor of the consumer."  *Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002).

74.     The FDCPA is to be interpreted in accordance with the "least sophisticated consumer" standard.  *See Brown v. Card Serv. Ctr*, 464 F.3d 450, 453 fn1 (3d Cir. 2006); *Graziano v. Harrison,* 950 F.2d 107, 111, fn5 (3rd Cir. 1991).  The FDCPA was not "made for the protection of experts, but for the public - that vast multitude which includes the ignorant, the unthinking, and the credulous, and the fact that a false statement may be obviously false to those who are trained

and experienced does not change its character, nor take away its power to deceive others less experienced." *Id.* The least sophisticated consumer standard serves a dual purpose in that it ensures protection of all consumers, even naïve and trusting, against deceptive collection practices, and protects collectors against liability for bizarre or idiosyncratic interpretations of collection notices. *See Clomon*, 988 F.2d at 1318.

75.     To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading representations or means in connection with the collection of any debt and sets forth a non-exhaustive list of certain *per se* violations of false and deceptive collection conduct. *See* 15 U.S.C. § 1692e(1)-(16).

76.     Defendant Hunter Warfield's collection actions at issue, described hereinabove, violate 15 U.S.C. § 1692e(2)(A) due to Defendant Hunter Warfield's false representation of the character, amount or legal status of the discharged debt.

77.     Defendant Hunter Warfield's actions described hereinabove are the manifestations of their practices and policies to ignore the provisions of the Bankruptcy Code applicable to them and illegally collect or attempt to collect pre-petition debts from unsophisticated debtors.

## VIII. GROUNDS FOR RELIEF - COUNT IV

### INVASION OF PRIVACY

78.     Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above, as if rewritten here in their entirety.

79.     At all pertinent times, Plaintiff had a reasonable and lawful expectation not to be contacted and harassed by Defendants during the bankruptcy and post-discharge. When Plaintiff included the delinquent rent in bankruptcy, she was protected by the automatic stay from contact by the Defendants, except for PROS PM's limited authority to contact her about her vacating the leasehold, prior to receiving her bankruptcy discharge. Thus, Defendants' collection calls to

Plaintiff, text messages and correspondences and Hunter Warfield's post-discharge telephone calls were invasions of Plaintiff's privacy rights.  These wrongful acts of Defendants caused injury to Plaintiff.

80.     Additionally, when Defendant Hunter Warfield impermissibly accessed Plaintiff's TransUnion credit file and obtained her confidential personal and financial information in her consumer report, as stated hereinabove, Defendant Hunter Warfield's actions constituted an invasion of Plaintiff's private affairs and privacy rights.  These invasions were ones that would be highly offensive to a reasonable person because confidential and sensitive, personal and financial information is included in a consumer report.  Such wrongful acts caused injury to Plaintiff.

81.     Defendants' wrongful acts were invasions of Plaintiff's privacy rights and caused injury to Plaintiff, which resulted in extreme emotional anguish, loss of time and inconvenience. Plaintiff's injuries resulted from Defendant's malice, which entitles Plaintiff to exemplary damages under Texas Civil Practice and Remedies Code §41.003(a).

### IX.  GROUNDS FOR RELIEF- COUNTS V AND VI

### VIOLATION OF THE AUTOMATIC STAY AND DISCHARGE INJUNCTION

82.     Plaintiff repeats, re-alleges, and incorporates by reference all previous paragraphs above, as if set forth herein in their entirety.

83.     At all material times, Defendant PROS PM had actual knowledge of Plaintiff's Bankruptcy Case and of the discharge of the debt on the Account.  As PROS PM's collection agent, Defendant Hunter Warfield is imputed with knowledge of the bankruptcy.

84.     Defendants attempted to collect from Plaintiff personally on debt included in her Bankruptcy and which was later discharged, as evidenced by the telephone calls to Plaintiff, text messages, the sending of collection letters, and the sending of other correspondence when she was protected by the automatic stay or discharge injunction.

85.     Defendants' actions were willful acts in furtherance of their efforts to collect the discharged debt from Plaintiff, in violation of the automatic stay of 11 U.S.C. § 362 or discharge injunction imposed by 11 U.S.C. § 524(a).  Further, Defendants' acts were harassing and attempts to coerce and deceive Plaintiff to pay the uncollectable debt.  Defendants' failure to comply with the aforesaid laws, despite Defendants' being on notice of Plaintiff's Bankruptcy Case and discharge and the effect of Plaintiff's discharge, illustrates Defendants' utter contempt for federal law and the discharge injunction.

86.     The actions of Defendant Hunter Warfield constitutes harassment and coercive and/or deceptive actions taken to collect a discharged debt from Plaintiff, in gross violation of the discharge injunction imposed by 11 U.S.C. § 524(a)(1)-(3).

87.     Defendants knowingly and willfully violated the orders and injunctions of the Bankruptcy Court issued in the bankruptcy filed by Plaintiff.  After this prima facie showing by Plaintiff, the duty falls on Defendants to show, as their only defense, a present inability to comply with the orders and injunctions of the Bankruptcy Court, which inability must go beyond a mere assertion of inability.  Failing a showing by Defendants of their present inability to comply with the orders and injunctions of the Bankruptcy Court, Plaintiff must prevail on her claims, and Defendants must be held liable for knowingly and willfully violating the orders and injunctions of the Bankruptcy Court.  Any defense put forth by Defendants in this proceeding can only constitute a good faith exception, as no other reasonable explanation can be made for the conduct and actions of Defendants.  Any allegation of a good faith exception should not be allowed.

88.     Specifically, Defendants violated the part of the Bankruptcy Court's Discharge Order issued pursuant to 11 U.S.C. § 524(a)(2) that "operates as an injunction against the commencement, or continuation of an action, the employment of process, or an act, to collect,

recover or offset any such debt as a personal liability of the debtors, whether or not the discharge of such debt is waived ..."

89.     There are no exceptions under 11 U.S.C. § 524, other provisions of the United States Bankruptcy Code, or other applicable law that would permit Defendants' conduct, which was in blatant disregard of the discharge injunction.

90.     The orders and injunctions of the Bankruptcy Court cannot be waived, except by way of a properly filed and approved reaffirmation agreement, motion, stipulation or complaint, none of which occurred here.  No waiver of the orders or injunctions of the Bankruptcy Court has occurred.

91.     Also, there is no requirement of mitigation on the part of Plaintiff that is relevant to Defendants' violations of the orders and injunctions of the Bankruptcy Court.  Any burdening of Plaintiff with an obligation to police the misconduct of Defendants would be a complete derogation of the law.  It is well-settled that each party to an injunction or order of the Court is responsible for ensuring its own compliance with the injunction or order and for bearing the cost of compliance.  Any attempt by Defendants to mount such a defense would constitute a collateral attack on the injunctions and orders of the Bankruptcy Court in this proceeding, which is prohibited.  Any such defense put forth by Defendants in this case can only constitute a claim of mitigation, as no other reasonable explanation can be made for the conduct and actions of Defendants.  No defense of failure to mitigate should be allowed.

92.     Plaintiff has been injured and damaged by Defendants' actions, and Plaintiff is entitled to recover judgment against Defendants for actual damages and punitive damages, plus an award of costs and reasonable attorney's fees, for Defendants' violations of the automatic stay of 11 U.S.C. § 362 and the discharge injunction of 11 U.S.C. § 524 and pursuant to the Court's powers under 11 U.S.C. § 105.

## X. VICARIOUS LIABILITY/*RESPONDEAT SUPERIOR*

93.     Plaintiff will be able to show, after reasonable discovery, that all actions at issue were taken by employees, agents, servants, or representatives, of any type, for Defendants, the principal, within the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability on Defendants for all such actions under the doctrine of *respondeat superior* and/or vicarious liability.  This includes, but is not limited to, PROS PM being liable for all acts of Hunter Warfield at issue in this matter, as Hunter Warfield was acting as the collector of the Account and a duly authorized agent or representative of PROS PM at all times at issue.

## XI. DAMAGES

94.     In addition to any damages previously stated hereinabove, the conduct of Defendants has proximately caused Plaintiff past and future monetary loss; past and future mental distress, emotional anguish and a discernable injury to Plaintiff's emotional state; and other damages, evidence for all of which will be presented to the jury.  Moreover, dealing with the consequences of Defendants' actions has cost Plaintiff time and mental energy, which are precious to her.

95.     At all relevant times, Defendants knew, and they continue to know, that, pursuant to the automatic stay and/or discharge order, included and listed debts are no longer legally collectible, but Defendants made a corporate decision to act knowingly, willfully, maliciously, and contrary to their knowledge of bankruptcy law, to attempt to collect on the debt it knew had been protected as a result of Plaintiff's Bankruptcy Case.  Defendants had no right to engage in any of the actions at issue.

96.     Plaintiff believes that, after reasonable discovery in this case, she will be able to show that all actions taken by, or on behalf of, Defendants were conducted maliciously, wantonly,

-21-

recklessly, intentionally, knowingly, and/or willfully, with the desire to harm Plaintiff, with the actual knowledge that such actions were in violation of the law.

97.     Plaintiff believes that, after reasonable discovery, she will be able to show that Defendants have been involved in numerous disputes involving complaints about the type of conduct at issue here; nevertheless, Defendants, intentionally and knowingly, have refused to correct its policies and comply with applicable laws, of which laws it is well-aware.

98.     Plaintiff believes that, after reasonable discovery, she will be able to show that Defendants have engaged in a pattern and practice of wrongful and unlawful behavior, in accordance with its established policies and procedures, with respect to knowingly, willfully, intentionally, and maliciously attempting to collect on debts discharged in bankruptcy. Accordingly, Defendants are subject to punitive damages, statutory damages, and all other appropriate measures necessary to punish and deter similar future conduct by Defendants. Moreover, Plaintiff's injuries resulted from Defendants' malice, and/or willful and intentional misconduct, entitling Plaintiff to punitive damages.

99.     Plaintiff believes that, after reasonable discovery, she will be able to show that Defendants' actions at issue were part of Defendants' illegal design, implemented in their policies and procedures, to profit by harassing unsophisticated debtors and collecting debts that had been included and discharged in the debtors' respective bankruptcy cases.

100.    Due to Defendants' conduct, Plaintiff was forced to hire counsel, and her damages include reasonable attorney's fees incurred in prosecuting her claims.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Leah Ashley Dowdell prays the Court:

A.      Enter judgment in favor of Plaintiff and against Defendants for statutory damages, actual damages, costs, and reasonable and necessary attorney's fees for Defendant Hunter

Warfield's violation of the FCRA and FDCPA and Defendants' violations of the TDCA, Plaintiff's privacy rights, the automatic stay and the discharge injunction;

B.    Find that appropriate circumstances exist for an award of punitive damages to Plaintiff;

C.    Award Plaintiff pre-judgment and post-judgment interest as allowed by law; and

D.    Grant such other and further relief, in law or equity, to which Plaintiff might show she is justly entitled.

Respectfully submitted,

*/s/ James J. Manchee*
James J. Manchee
State Bar Number 00796988
jim@mancheelawfirm.com
MANCHEE & MANCHEE, PC
5048 Tennyson Parkway, Suite 250
Plano, Texas 75024
(972) 960-2240 (telephone)
(972) 233-0713 (fax)

COUNSEL FOR PLAINTIFF

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

February 22, 2021                        */s/ James J. Manchee*
Date                                     James J. Manchee